Good morning, Your Honors. If it please the Court, this case begins, In menius res, in Horace, to describe the way that epic poets would begin their poems, not in chronological order, but in the thick of battle. You think this is an epic case? Yes, Mr. Gard has been fighting this case, has been fighting the Department of Education for over ten years. Where is the epic harm? I mean, he's denied a chance to attend a seminar that had a $4,000 entrance fee. I can imagine a supervisor not wanting to put out the extra money. He's denied a few requests that seem rather nominal. Where's the great, the statute's supposed to prevent him from being fired or demoted or vast personnel harm to him. Where is that here? But ultimately, Your Honor, he has been placed in a position in which he is subject to determination. And one of the personal actions that I... Well, is subject to determination in the statute is a harm? He's got to be terminated or demoted. You know, it's not whether he perceives that he's in a, he's in jeopardy. There's no perception here. You have to have some harm. Where is it? Your Honor, this case is not in a vacuum. This case is in a context in which Mr. Gard in 1998 was ceremoniously paraded out of the Department of Education. There was a poster of him placed throughout the building in which employees were warned not to let Mr. Gard in the building and that if he were to return to the building, there would be pain of termination. It was almost as graphic as the head of Oliver Cromwell dangling before the City of London. So, Mr. Gard, when he was restored... There are a number of items here which were cited as procrimination items. And the trial, the AJ and the board found, as a matter of fact, that all of these treatments would have been taken anyway. Now, that's a pretty high order, high Hildas amount on appeal. That is how the judge chose to interpret the case. But in fact, we believe that the two issues in certain ways are inextricably intertwined. And I think the evidence would show that the agency would not have taken those actions otherwise, as I argued in the brief. But that's factual. Unless you can show that there was nothing on the other side, you're going to lose that, right? On appeal, substantial evidence standard. Well, if we show by the weight of the evidence that... No, it isn't a weight of the evidence. It's a substantial evidence, which means if they have any evidence to support their case, you lose. Yes, and if they have any evidence, but if in fact there's evidence that was completely ignored, then that is something that any court would take into consideration. And we argue that there was a considerable amount of evidence that was ignored. Did the board say we're ignoring this evidence or is it just not mentioned? It's not mentioned and that's tantamount to ignoring it. There were only four witnesses in the case, Your Honor, and to have excluded the testimony of one of them all together does seem to be something that wasn't simply not mentioned, but something that was deliberately omitted. But on the substantial evidence rule, if someone presents X amount of evidence and it's not rebutted, the fact that you might have mounds and mounds of evidence against it, and even more evidence you weren't allowed to bring in, under the substantial evidence rule, which is a funny name for it, how does that help you? The fact you could bring in truckloads and files of more evidence, once they have met that there's some evidence, some credible evidence, what does it matter that you didn't bring in everything you have? Because we brought in evidence that really undermined the very credibility of the evidence that was established by the other side. We showed that an objective... Now, you may have brought some in already, but the trial court or the finder of fact has discarded or discounted that. What missing evidence, this extra that you're complaining about, would have helped you? Well, we believe that the court was narrow in discarding that there was a witness who had no axe to grind. The one objective witness, Linda Feeney, who has contradicted the basis of the agency's case. Ms. Feeney testified, for example, that Mr. Gard had a great deal of ability, which is something that Mr. Mueller denied. Ms. Feeney testified that the MOU that she and Mr. Gard had been assigned was one of the most Ms. Feeney testified that she and Mr. Gard essentially authored that because it was a shell as it was presented to them, and that this shell was not only something that they vastly changed, but that Mr. Mueller utilized for the rest of the agency, for the rest of the organization, and instructed them to give to the other organization. And Ms. Feeney testified that when Mr. Gard was doing all these things, he did it with a great deal of ability and acumen, which Mr. Mueller ultimately denied. And these are all things that Mr. Mueller claimed were not the case. And no one ever suggested that Ms. Feeney lied. I'm sure Judge Clark would tell you, who hears testimony on a regular basis, that conflicting testimony is the human condition. We all perceive things differently. We state them differently. And to have conflicts in testimony is the ordinary course of every factual proceeding. That's just because people perceive and state things differently. Indeed, Your Honor, a set of historians could look at the same documents concerning the origins of the First World War and come to vastly different conclusions. But the point is that when testimony that is objective, the only objective witness, is simply ignored and excluded altogether, then there has to be a reason for that. Well, now, that right there is the decision, the only objective witness. Isn't that what the finder of fact has to decide is who's objective? And then take a look at other evidence. For example, on parts of this, Mr. Gard taking sick leave, 46 out of 124 days, completing only a few projects from other people, five or six projects, and the average is 26. I mean, there's other factual underpinnings for the testimony that the judge finally relied upon. So it's not just merely in a vacuum, is it? Well, to the extent that he ignored the one witness who had absolutely no reason to provide any prejudice in this case whatsoever, I think it is something that the judge should have addressed, and it is very striking. In fact, the silence speaks volumes, Your Honor. I can save the rest of your time for you if you have more to say. No, I did want to continue. I'll continue. This is a case, as I said, that was not in a case where Mr. Gard was marched out of the agency. You brought that up a couple of times, but wasn't that in a previous case? It was in a previous case. I'm just using it as context to explain why these issues are particularly significant here and why this is done. So he gets to keep bringing it up forever? And even though he's received relief once, he gets to keep using that again and again? Well, he's not using it again and again. If the agency were to leave him alone, he wouldn't have to be bringing this up again and again. How did they not leave him alone? They gave him a satisfactory rating. He's not happy with that. They didn't let him go to some training. He's not happy with expensive training, not happy with that. What is this? He wins one case, and so forever he's a golden boy who gets to do whatever he wants? Well, the fact that he won the case he believes has been impetus for reprisal against him in the rest of the cases. I also want to just address the fact that the agency should have provided the administrative file. They're only reprisals if the Merit System Protection Board finds that they were actions taken against him because of his whistleblowing, right? Yes, that's right. And they didn't find that. They found these are things that happen in the normal course of supervisor-employee relationships. They would have happened anyway. By ignoring a substantial amount of evidence, Your Honor, as I pointed out, I would like to save the rest of my time for rebuttal. We will do that. Thank you, Your Honors. Ms. Hogan. Good morning, Your Honors. May it please the Court. The judgment of the Merit Systems Protection Board should be affirmed because it is supported by substantial evidence. The conflicts in testimony... To start with my point that I talked with Mr. Fuchs about, would it be permissible for a supervisor to take actions against an employee always just short of demotion, just short of firing, and make their life so uncomfortable that maybe you can induce them to resign? Would that be a course of retaliation that the Whistleblower Protection Act would have redress for? I don't think that an individual right of action claim, which is what Mr. Gard brought, that that would be sufficient to establish jurisdiction before the Board. Certainly, if the allegation was that the harassment was so bad that no person could have conceivably remained in that position and had... Then we'd reach a point where we could have a constructive removal of some kind, wouldn't we? Right, and the Board would again still would address that as a constructive suspension and would take those facts into account, and that wouldn't necessarily... Was that considered by the Board? The Board look at this as a pattern that may have reflected some kind of retaliation against someone who was held in disrepute by supervisors? No, Your Honor. The Board did not, and Mr. Gard did not make that larger claim of harassment. I mean, and under the Whistleblower Protection Act and under the Board's regulations, as this Court stated previously, there are certain personnel actions that the Board is empowered to review. Demotions, removals, adverse performance appraisals, things like that. Those are the types of personnel actions that the Board can review and that the Board did review here. And it's very much going to be the case that there may be uncomfortable situations at work. Supervisors and employees may not always get along. That is... The Congress did not intend for the Board or for this Court to be involved in the day-to-day management of uncomfortable situations. The Board is empowered to review as concrete personnel actions, and that's what the discovery and requiring the respondent to give over the departmental folder, the file. What was so wrong with... Why wouldn't the department turn that over and say, here it is, take your best shot? You don't have anything. Or are they hiding something back there? No, Your Honor. What happened in this case is the Board issued its normal acknowledgement order saying respond within 20 days, and the agency did respond by filing a motion to dismiss. But evidently they didn't provide this file.  We don't know what they didn't provide, actually. The file was never provided, and the reason for that was that the motion to dismiss was taken under advisement by the administrative judge up until the hearing in 2008, until Mr. Gard established that the Board had jurisdiction by making his non-frivolous allegations of whistleblowing. But if the Court is interested in justice and full disclosure and a full and fair opportunity for the parties to participate, and your client's hiding this file, why shouldn't there just be a remand? So let's find out what these facts are. Otherwise, who's going to do it? Who's going to get at this information? Well, certainly, Your Honor, Mr. Gard admits that whatever would have been produced in an agency response, he could have obtained through discovery, which he did not seek during any of his time. So to the extent there was any error on the judge's part in not enforcing his prior order, that could have easily been resolved by Mr. Gard or Mr. Gard's attorney taking depositions of the supervisor or serving interrogatories or making document requests, and he didn't do any of that. And as we pointed out in our brief, much of the documents that Mr. Gard would have received were documents that he either already had or he created himself. I think what we're looking at here is a question of the administrative judge's power to manage his case. And here, the administrative judge made, I believe, the correct determination to say, first, we have to establish that there's jurisdiction. And so in order after order after order, the judge said, Mr. Gard, please, in a clear, plain, short statement, tell us what your whistleblower allegations are. And that was not complied with until November of 2007, at which point the parties submitted their pre-hearing submissions, and there was a hearing at which point Mr. Gard's attorney had ample opportunity to cross-examine the supervisor on any of the issues that he wished to discuss. Just quickly to address the issues regarding the conflict in testimony, of course, the administrative judge is only required to resolve material conflicts. And much of what Mr. Gard raises regarding his talents as an accountant and other issues simply are not relevant to the issues of whether the supervisor and agency would have taken the actions despite his alleged whistleblowing disclosures. And if the court has no further questions, I would respectfully request that the court affirm the judgment of the MSPB. Let me ask just one question, if I could. Do you have one? No, I'll wait. Okay. I understand he received this rating of satisfactory, and I'm not sure in this particular agency what the grade creep is, but I know in various federal agencies, including the Uniformed Services, that at various times there was this problem that satisfactory just basically meant the person was worthless and was the kiss of death for their career. If they weren't perfect, they're done. And so everybody was perfect. Any discussion of that in the record or in this particular? Of course, that meant the rating system is useless because if everybody's perfect, then nobody, it's a useless system, but that's the way it was anyway. Any discussion of this satisfactory rating in effect being a complete unsatisfactory? No, Your Honor. There are five ratings, so there was an unsuccessful, a minimally successful. Successful, which is what Mr. Gard received, highly successful, and then an outstanding. The supervisor testified that there were other accountants that he rated who also received successful ratings. He explained that, in fact, some of them were rated maybe on the lower scale of that, that he was a tough grader and said that there were only a few of his accountants who did receive highly successful or outstanding. And it's also worth pointing out that what the supervisor also testified to was that normally to receive the next highest rating, he would have had to have completed 20 assignments. He completed one, even considering the fact that he was a trainee, that he was taking a little longer to get his feet wet, so to speak. He only completed one out of the five or six assignments that he was assigned to. And the administrative judge concluded that, in fact, the rating of successful may have been generous on the supervisor's part. What about Mr. Godd having been marched out of his office? We've heard of this two or three times. Your Honor, that was part of a prior action that was resolved through a settlement agreement and that was resolved long ago. And there really was no testimony or the board really didn't address that here in terms of any retaliation due to his prior . . . And that's what he's supposed to be receiving retaliation for, right, is bringing some of these earlier claims? Well, here, no. The retaliation was retaliation for the protected disclosures that he claims he made in 2004, not his prior action. So that really was not addressed in this particular case. Thank you, Your Honor. Thank you, Ms. Holden. Mr. Fuchs has a little rebuttal time. Yes, Your Honors, and I intend to use it. To begin with, Your Honors, if it pleases the Court, with respect to the outstanding versus the highly successful, Mr. Mueller testified that the 20 assignments were needed for a highly successful. But then when it came to naming the employees who had completed the 20 assignments, those were all employees who had received ratings of outstanding. So in fact, Mr. Mueller was operating according to ad hoc reality. He simply tailored the number of assignments needed to the rating that he wanted to give, and that was reflected in his testimony. But hadn't Mr. Gard completed one project at the same time that many of his peers had completed many more? There wasn't testimony that many of his peers had completed many more. There was the reference to these employees who had completed the 20 assignments, and that was those employees were given outstanding ratings. And in addition, there was testimony that Mr. Mueller, that there was a conflict again between Ms. Feeney and Mr. Mueller, which the administrative judge did not address, concerning how those assignments could be completed. That is, Ms. Feeney substantiated Mr. Gard's explanation that there were abbreviated reviews that people could do, and Mr. Mueller denied that there was this possibility of abbreviated reviews, which simply meant that someone who wanted an assignment completed could multiply the figures that were already there by 95%, and one could do that with 10 or 19 or even 30 assignments. Mr. Gard did not have that option. Moreover, as Ms. Feeney testified, and as Mr. Mueller could not deny, the memorandum of assignment that he had given to Mr. Gard and Ms. Feeney was for that Nevada project in which they were working was the most difficult of all the assignments. Ms. Feeney thought it was the most difficult, and again, she had no reason really to sprout her feathers on this. That was her view of it. Mr. Mueller in the final analysis on his second day could not say that Mr. Gard and Ms. Feeney did not construct that out of whole cloth. That's actually in the transcript. That's something that I referred to in the brief. So I think that the explanation of assignments is something that the court could have addressed by considering this conflict between Ms. Feeney and Mr. Mueller. Again, there were only four witnesses in this case, your honors. The administrative judge's failure to account for even one of those witnesses is something that I find to be very, very striking. Now, Ms. Hogan also referred to the administrative file issue, and she said, well, this is really Mr. Gard's problem. This is Mr. Gard's fault, and after all, the administrative judge was simply managing his caseload. The administrative judge gave this order, as Ms. Hogan pointed out. He gives all such orders, and yet when it came to enforcing orders, he made Mr. Gard submit vast submissions, but he did not require the agency to do the same until Mr. Gard had submitted those vast submissions establishing why the board had jurisdiction. Now, I've referred a great deal to context. I'm not going to refer again to the events of 1998, but I will refer to the fact that while the discovery process had initially been going on after the agency was supposed to have produced its file, there was a considerable period in which the parties were engaged in settlement negotiations, settlement negotiations which the parties presumably had good reason to think might succeed since there had been a settlement ultimately of the case involving the actions that took place in 1998, but finally, those settlement discussions collapsed, and at that point, Mr. Gard wrote, or through me, wrote to the administrative judge and said that he wanted the case to proceed, and at that point, the judge put the case on the fast track and required Mr. Gard to make vast submissions establishing why the board had jurisdiction and why, in fact, the allegations were not frivolous, but somehow, with all that, there was no reference to the agency file, and when I find... Did you file a motion to compel or whatever the similar procedure would be? Well, at the point that we were talking about discovery, the judge had simply said he wasn't going to entertain it at that point because there had been no motion to compel up until that point, but of course, there was never going to be a motion to compel during the fast track. Mr. Gard's efforts and my efforts were totally subsumed in proving that the board did, in fact, have jurisdiction in establishing that the allegations were not frivolous, but there was no reason that the judge couldn't have ordered that an agency file not be produced at that point. Thank you, Mr. Fuchs. We have your argument. We'll take the case under advisement. Thank you, Your Honors.